IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:21-CR-00167-HEA/SRW |
| | ) | |
| JONATHAN DAVIS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION TO SUPPRESS PHYSICAL EVIDENCE AND MEMORANDUM OF LAW

COMES NOW defendant JONATHAN DAVIS, by and through counsel, Assistant Federal Public Defender Tyler Morgan, to move this Honorable Court to suppress evidence seized as a result of an unlawful search of his cellular phone. The search was undertaken based on a search warrant lacking in probable cause that did not comply with probable cause requirement for a valid search warrant. The complete lack of probable cause made any belief in the validity of the warrant by the officers who executed the warrant unreasonable.

Jonathan Davis stands charged by indictment with the offenses of obstructing, delaying, or affecting commerce or the or the movement of any article in commerce or attempt to do so by robbery, in violation of 18 U.S.C. § 1951(a) (Count 1), and possession and brandishing of a firearm, in violation of 18 U.S.C. § 924(c) (Count 2). The alleged date of commission of the offenses is January 23, 2021.

THE AFFIDAVIT FOR A SEARCH WARRANT

On August 12, 2021, Detective Stanley Dooley applied for the search warrant at issue in this motion.  He prepared an affidavit and swore to the contents of that affidavit before U.S. Magistrate Judge John Bodenhausen.[1]

The affidavit sought leave to search and perform a forensic examination upon "a red Apple iPhone cellular telephone with a black 'Otterbox' brand case."

As probable cause to search Mr. Davis' phone, the search warrant stated that Mr. Davis had been identified as having robbed a Steak N' Shake restaurant at 9550 Natural Bridge Road, in Berkeley, Missouri, at approximately 12:30 a.m. on January 23, 2021.  The affidavit stated Mr. Davis' cellular telephone number.  The affidavit stated that Mr. Davis was arrested on March 2, 2021, and that his cellular phone was seized from him at that time.  In an interview following his arrest, Mr. Davis denied being present at the time of the robbery.

The affidavit sought leave to forensically examine and search the seized cellular telephone.  It justified this request with non-specific, generic, boilerplate language stating, "In summary, electronic devices and the services they provide are such a pervasive and insistent part of daily life that carrying one is indispensable to participation in modern society.  Thus, there is reason to believe that the individuals and their associates described in this affidavit used mobile electronic devices in

---

[1] An earlier, nearly identical, search warrant had been sought and granted before U.S. Magistrate David Noce.

conjunction with the events described herein.  The devices themselves operate as instrumentalities of the crimes."  The affidavit stated the uses that people make of phones generally, the ability of the phone's location data to indicate a user's physical location at the time of alleged incidents, that phones can be used to communicate with co-conspirators and accomplices, to take photos, to brag to confederates, to post videos, and to obtain information from internet services.  There was, however, no indication in the affidavit of the involvement of co-conspirators or accomplices, or that the person doing the robbery was in possession of a phone at the time of the alleged robbery.  There was no specific evidence cited of actual use of a cellular phone in the commission of the offense.

## THE SEARCH WARRANT

On August 12, 2021, based on the affidavit of Special Agent Dooley, U.S. Magistrate Judge John Bodenhausen granted a search warrant.  The search warrant authorized a search of the cell phone seized from Mr. Davis.

## REASONABLE EXPECTATION OF PRIVACY

*Riley v. California*, 134 S.Ct. 2473 (2014), stated that a warrant is required to search digital information on a cellular phone seized from an individual who has been arrested.  The case recognized that substantial privacy interests are involved when digital information is involved.  "Modern cell phones, as a category, implicate privacy concerns far beyond those implicated by the search of a cigarette pack, a wallet, or a purse."  *Id*., at 2489.

3

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Court in ***Riley*** noted some distinct characteristics of cell phones and the contents people keep on them.

> Cell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term "cell phone" is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers.

*Id*., at 2489.

> Indeed, a cell phone search would typically expose to the government far *more* than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is.

*Id*., at 2491.

> Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans "the privacies of life," *Boyd, supra*, at 630, 6 S.Ct. 524. The fact that technology now allows an individual to carry such information in his hand does not make the information any less worthy of the protection for which the Founders fought. Our answer to the question of what police must do before searching a cell phone seized incident to an arrest is accordingly simple—get a warrant.

*Id*., at 2494-2495.

4

There is no dispute that in this case, the investigating officers did seek and obtain a warrant.  The warrant, however, was not based upon probable cause.

## THE WARRANT WAS NOT BASED ON PROBABLE CAUSE

Unlike in ***Riley***, the search in this case was pursuant to a search warrant. However, "[t]o be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause." ***United States v. Wallace***, 550 F.3d 729 (8th Cir. 2008).  "Probable cause exists, if under the totality of the circumstances, a showing of facts can be made sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." ***United States v. Underwood***, 364 F.3d 956, 963 (8th Cir. 2004).  In ***United States v. James***, 3 F.4th 1102 (8th Cir. 2021), the court wrote that probable cause requires "a showing of facts" that "create a fair probability that evidence of a crime will be found in the place to be searched."

"When the magistrate relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" ***United States v. Etheridge***, 165 F.3d 655, 656 (8th Cir, 1999).

The affidavit did not state probable cause to justify the search of the cell phone for at least the following reasons:

Nothing in the affidavit says that there is any indication that a cell phone was used in the commission of the alleged offense.

Nothing about the nature of the offense suggests that a cell phone was a

necessary instrumentality of the offense.

Nothing in the affidavit supported the general assertion that this cell phone had operated as an instrumentality of the alleged crime.

Nothing in the affidavit indicated that the cell phone was actually present at the scene of the alleged offense.  No witnesses told police that the robber had or used a cell phone.

The portion of the affidavit that actually dealt with supposed reasons to justify the search of the phone was boilerplate and could be used to attempt to justify the search of the cell phone of any arrestee.  It basically said that people use cell phones to communicate with associates and co-conspirators.  There was, however, no mention of actual evidence of any accomplices or co-conspirators.  No witness said that there was another person involved.  The affidavit speculated that there might be photographic evidence on a cell phone.  But, again, there was nothing specific to suggest that this was the case in this particular case.  The affidavit was in support of a fishing expedition.

See the case of **United States v. Ramirez**, 180 F.Supp.3d 491 (W.D. Kentucky Apr. 12, 2016).  "The only basis for a search of the telephone is a general and conclusory statement that the affiant, who has only been in law enforcement for three (3) years, has 'training and field experience that individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim.'"  The court in **Ramirez** held that such a

6

boilerplate statement did not rise to the level of probable cause, writing, "the affidavit says only that unspecified "individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim." Aff. 2. Without any additional detail tying Ramirez's arrest to his cell phone,   this boilerplate statement   is   insufficient   to   establish   the particularized facts demonstrating fair probability that evidence of a crime will be located on the phone."

The Supreme Court of Massachusetts in ***Commonwealth v. White***, 59 N.E.3d 369 (Mass. 2016), in held that an officer's opinion--that based on training and experience, evidence of a crime can often be found on a cell phone--was insufficient to establish probable cause, even when the defendant was a suspect in a multi-perpetrator crime and officers knew he owned a cell phone.  The court pointed to the fact that officers had "no information that the cellular telephone had been used to plan, commit, or cover up the crime, or that it contained any evidence of the crime." The court reasoned that "it would be a rare case where probable cause to charge someone with a crime would not open the person's cellular telephone to seizure and subsequent search" if these facts alone were sufficient to establish probable cause--a result which is contrary to the significant privacy interests that individuals have in cell phones. ***Id***., at 377.  In ***White***,

> prior to seizing the defendant's cellular telephone, police had received information that the robbery and homicide under investigation had been

committed by several people, that the defendant likely was one of those people, and that he owned a cellular telephone. They also knew from experience that coventurers often use cellular telephones to communicate with each other, and that these devices may contain evidence of such communications. According to their own statements, however, the detectives here did not have any "information that [a] cell phone was used in the crime under investigation," nor did they claim that there existed a particular piece of evidence likely to be found on such a device. In essence, then, their decision to seize the defendant's cellular telephone was made because (a) they had reason to believe that the defendant had participated with others in the commission of a robbery-homicide and (b) their training and experience in cases involving multiple defendants suggested that the device in question was likely to contain evidence relevant to those offenses.

This, without more, does not satisfy the nexus requirement. "Information establishing that a person [may be] guilty of a crime does not necessarily constitute probable cause to search" or seize the person's cellular telephone, even where the police believe, based on their training and experience in similar cases, that the device is likely to contain relevant evidence (citation omitted). *Commonwealth v. Pina,* 453 Mass. 438, 441, 902 N.E.2d 917 (2009). Rather, even where there is probable cause to suspect the defendant of a crime, police may not seize or search his or her cellular telephone to look for evidence unless they have information establishing the existence of particularized evidence likely to be found there.

*White*, at 377.

See also, ***United States v. Tirado***, 2018 WL 3245204 (E.D. Wis. Jan. 26, 2018) (holding that a warrant to search cell phones found on a suspect a week after a retail theft incident was not supported by probable cause). The court in the ***Tirado*** case stated: The affidavit establishes that photos from the surveillance video were used to identify Dumas. It also establishes that Dumas was arrested and that when he was arrested he was in possession of the two cell phones. But the bare-boned affidavit woefully fails to connect the two cell phones with the commission of the retail theft and disorderly conduct. Recall that Dumas was arrested one week after the

8

theft. Nothing in the affidavit suggests that he was in possession of the cell phones during the commission of the retail theft and disorderly conduct, or that he used the cell phones during the commission of the offenses.   "There must be some nexus between the items to be searched and the commission of the crime. A mere boilerplate recitation about the use and features of cell phones is not enough. Otherwise being arrested for anything, including minor violations of the law, would always provide probable cause to search one's cell phone regardless of any connection between the violation arrested for and the cell phone. The law requires more." ***Tirado***, at *16.

Also from ***Tirado***,

> Equally, the generic boilerplate statement that "cellular phones have the potential to show the location of where the user(s) (suspect) of the device were previously located" is insufficient where nothing else connects the cell phones to the offenses. Neither statement read alone or together connects the cell phones to the specific offenses alleged in the affidavit. With the ubiquity of cell phones, both of these statements can be cut and pasted into any affidavit. A reasonably well-trained officer would have known that specific facts connecting the items to be searched and the alleged offense are required for probable cause and in the absence of specific facts, he should not have applied for the warrant. Stated differently, the nexus between the cell phones and the alleged offenses are nonexistent such that a reasonably well trained officer would have known that the warrant was not supported by probable cause despite the judge's authorization.
>
> For this reason, I conclude that this affidavit is so plainly deficient as to mock the probable cause standard and, more fundamentally, the Fourth Amendment. I recommend that the court find that the *Leon* good faith exception does not apply in this case and the evidence seized from the two cell phones be suppressed.

***Tirado***, at *17.

An observation from the case of ***United States v. Martin***, 833 F.2d 752 (8th

Cir. 1987), is appropriate here.  There, "The district court held that [the law enforcement officer's] affidavit may support an educated guess, but not probable cause." *Id*., at 755.

THE GOOD FAITH EXCEPTION DOES NOT APPLY HERE

The Supreme Court has identified four circumstances in which an officer's reliance on a search warrant would be objectively unreasonable: (1) when the affidavit or testimony in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) when the warrant is "so facially deficient" that the executing officer could not reasonably presume the warrant to be valid. ***United States v. Grant***, 490 F.3d 627, 632 (8th Cir. 2007).  In this case, at least the third instance applies:  the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

The affidavit in this case lacked the information necessary to establish probable cause.  It was completely lacking in indicia of probable cause.  It was based upon speculation and boilerplate that could apply in almost all cases where an arrestee for a crime has a phone.  It was unreasonable for a trained and experienced

10

officer to believe that it did establish probable cause and the "good faith" exception does not save this search of this phone.

CONCLUSION

Any evidence seized from the cellular phone of Mr. Davis was seized because of an invalid warrant not based upon probable cause. The illegal search and seizure violated the defendant's rights under the Fourth Amendment to the United States Constitution.

BY REASON OF THE FOREGOING, Defendant Jonathan Davis moves this Honorable Court to suppress evidence seized as a result of an unlawful search of his cellular telephone.

Respectfully submitted,

/s/ *Tyler Keith Morgan*
TYLER KEITH MORGAN
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Tyler_Morgan@fd.org
ATTORNEY FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jennifer Szczucinski, Assistant United States Attorney.

/s/*Tyler Keith Morgan*
TYLER KEITH MORGAN
Assistant Federal Public Defender