UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | )   No.   4:21-CR-00167-HEA-SRW |
| | ) |
| v. | ) |
| | ) |
| JONATHAN DAVIS, | ) |
| | ) |
| Defendant. | ) |

**<u>UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE</u>**

The United States of America, by and through its Attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Jennifer L. Szczucinski, Assistant United States Attorney for said District, submits this response in opposition to the Motion to Suppress Physical Evidence [Doc. 44] filed by the Defendant Jonathan Davis ("Defendant").  The Defendant alleges that a search warrant obtained to search his cellular phone lacked probable cause and should be suppressed, despite the "good faith exception" enumerated in *United States v. Leon*. 468 U.S. 897 (1984). The Defendant's claims are without merit, as the search warrant contained sufficient probable cause to search his cellular phone and, even if it did not, the *Leon* good-faith exception prevents suppression of the evidence obtained from the cellular phone.

**I.      STATEMENT OF FACTS**[1]

---

[1] The United States expects that the evidence at any evidentiary hearing or trial of this case will demonstrate the facts included in this background section.  This section merely is an outline of the United States' evidence to be presented at the hearing on Defendant's motions and should not be deemed a Bill of Particulars binding the United States to a fixed theory of proof.

1

On January 23, 2021, at approximately 12:30am, the Defendant entered a Steak N' Shake restaurant, located at 9550 Natural Bridge Road, Berkeley, Missouri 63134. At the time the Defendant walked in the restaurant, the restaurant had just closed and the franchise owner was in the back office of the restaurant getting ready to prepare bank deposits.  The Defendant walked past two employees, one of whom recognized the Defendant as former employee, and directly to the back office.  The Defendant held a gun to the franchise owner's neck and demanded money from the safe.  The franchise owner complied and gave the Defendant three plastic deposit bags containing approximately $4,000 and loose cash from the cash register drawer.  After obtaining the money, the Defendant fled through the back door of the restaurant.

The franchise owner immediately contacted law enforcement and identified the Defendant, by name, as the robber. According to the franchise owner, the Defendant had worked at the restaurant for approximately eighteen months and had ended his employment approximately two months prior to January 23, 2021.  The franchise owner subsequently identified the Defendant in a photographic line-up. Two days after the robbery, an employee gave the Defendant's current cellular telephone number to the franchise owner who, in turn, provided the phone number to law enforcement.

On March 1, 2021, the Defendant was arrested during a traffic stop. At the time he was arrested, the Defendant was in possession of an Apple iPhone cellular telephone. The Defendant was interviewed by law enforcement. During his interview, the Defendant denied committing the robbery and alleged that he was on his phone, talking to his girlfriend, at the time of the robbery.

On August 12, 2021, Officer Stanley Dooley, a Saint Louis County Police Officer and Federal Bureau of Investigation Task Force Officer, applied for a search warrant to search the Defendant's Apple iPhone. *See* 4:21-MJ-1324 JMB ("Search Warrant"). In his affidavit, Officer Dooley

outlined his training and experience, including that he had been a police officer for six years and had experience investigating violent crimes and using forensic cellular phone analysis. *Id*. at ¶ 2. Officer Dooley explained that he knew that the Defendant's cellular phone could serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. *Id*. at ¶ 9. Officer Dooley detailed what occurred during the robbery and that the Defendant had been identified by name and in a photographic line-up. *Id*. at ¶ 11-17. Officer Dooley stated that two days after the robbery, a restaurant employee provided the franchise owner with the Defendant's cellular phone number, who provided the phone number to law enforcement. *Id*. at ¶ 18. Officer's Dailey's affidavit included information about the Defendant's arrest, including that the Defendant told law enforcement he was not at the restaurant when the robbery occurred, rather, he was on the phone with his girlfriend. *Id*. at ¶ 20.

After outlining specific facts about the robbery, the Defendant's connection to the robbery, and the Defendant's alleged use of a cellular phone at and near the time of the robbery, Officer Dooley described, with specificity, his knowledge regarding how individuals involved in robberies typically utilize cellular telephones for a variety of purposes to advance and commit criminal offenses. *Id*. at ¶ 22(a)-(f). Officer Dooley further stated that cellular telephones can contain location data, which can indicate the user's patterns of behavior such as their physical location at the time the incidents occurred, and immediately prior to or after such incidents. *Id*. Officer Dooley concluded by stating, "electronic devices and the services they provide are such a pervasive and insistent part of daily life that carrying one is indispensable to participation in modern society. Thus, there is reason to believe that the individuals and their associates described in this affidavit used mobile electronic devices in conjunction with the events described herein. The devices themselves operate as instrumentalities of the crimes." *Id*. at ¶ 22(g).

After reviewing the search warrant application and affidavit, the Honorable John Bodenhausen signed the search warrant, granting permission to search the Defendant's cellular telephone for 1) any information recording the Defendant's schedule or travel from January 1, 2021 to March 3, 2021; 2) any information related to the illegal possession of firearms and crimes of violence, including armed business robberies, including but not limited to photographs, text messages or instant messages, call logs, social media content, internet searches, IP address information, and portable media utilized; and 3) GPS coordinates of the cellular telephone during the times of the identified robbery; and 4) evidence of user attribution showing who used or owned the cellular telephone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history. Search Warrant, Attachment B. Officer Dooley subsequently provided the cellular telephone to law enforcement authorities for a forensic search.[2]

## II.     ARGUMENT

When the issuing judge relies entirely on a search warrant affidavit, consideration on the probable cause determination is limited to the affidavit. *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020). The existence of probable cause "depends on whether, under the totality of the circumstances, there is a fair probability evidence of a crime will be found in a particular place." *United States v. Daigle*, 947 F.3d 1076, 1081 (8th Cir. 2020) (*quoting United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016)). Even if a search warrant was not supported by

---

[2] Subsequent to obtaining the search warrant, Officer Dooley advised the United States that the Defendant's cellular telephone was password-protected, and law enforcement was utilizing a forensic tool to determine the password. Once the password was determined, the phone could be forensically analyzed. Aware that it could take several months to identify the password and the Defendant alleged exculpatory information could be contained on the cellular phone, the United States advised the defense of this information and gave a copy of the search warrant to the defense. The defense subsequently gave the United States the password to the Defendant's cellular telephone. The password was given to law enforcement and the Defendant's cellular phone was successfully forensically analyzed.

probable cause, the evidence obtained pursuant to the search warrant is often admissible under the good-faith exception to the exclusionary rule. *See Leon*, 468 U.S. 897 (1984). In the present case, the warrant to search the Defendant's cellular phone was supported by probable cause and, even if it was not, law enforcement acted in good faith in searching the Defendant's cellular phone.

### A. The warrant to search the Defendant's cellular phone was supported by sufficient probable cause.

To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause. *United States v. Summage*, 481 F.3d 1075 (2007). It 'is not a high bar" to establish probable cause. *Kaley v. United States*, 571 U.S. 320, 338 (2014). Probable cause exists, if under the totality of the circumstances, there is a showing of facts that "create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). Citing non-binding district court decisions from other circuits and a Massachusetts state opinion, the Defendant alleges that no probable cause exists because the search warrant did not allege that "the cell phone was actually present at the scene of the alleged offense[,]" or that a cellular phone was "used in the commission of the alleged offense[,] or that a cellular phone "was a necessary instrumentality of the offense." Doc. 44 at 5-6. However, a review of the affidavit makes clear that the affidavits contained information that "'provided a substantial basis' to conclude that probable cause existed." *United States v. James*, 3 F.4th 1192m 1105 (2021)(*quoting United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017)).

Officer Dooley's search warrant affidavit described the robbery in detail and included information that the Defendant had a cellular phone at the time of the robbery and when he was arrested. Search Warrant at ¶ 12-16, 18-19. Additionally, the affidavit included facts that the Defendant alleged he was not present of the robbery and was talking to someone on his cell phone

5

at the time of the robbery. *Id*. at. ¶ 20. However, the Defendant argues that because the affidavit does not contain facts alleging a cellular phone was used during the robbery or to commit the robbery, there is insufficient probable cause. What the Defendant fails to acknowledge is that "probable cause is about 'fair probabilit[ies],' not near certainties." *James*, 3 F.4th at 1105 (8th Cir. 2021) (*quoting United States v. Wallace*, 550 F.3d 728, 732 (8th Cir. 2008).

The Eighth Circuit, in *James* stated, "[e]ven if nobody knew for sure whether the robber *actually* possessed a cell phone, the judges were not required to check their common sense at the door and ignore the fact that most people 'compulsively carry cell phones with them all the time.'" *James*, 3 F.4th at 1105 (*quoting Carpenter v. United States*, --- U.S. ---, 138 S.Ct. 2206, 2218 (2018). The magistrate judge who signed the search warrant knew that "cell phones are now so widespread as to be ubiquitous." *United States v. Eggerson*, 999 F.3d 1121, 1125 (*citing Riley v. California*, 573 U.S. 373, 395 (2014). There was no reason for the judge to believe a robber is any less likely than an ordinary person to have and use a cell phone. *Eggerson*, 999 F.3d at 1125 (*citing United States v. Williams*, 976 F3d 907, 810 (8th Cir. 2020)).

Even without direct evidence that the Defendant had a cellular phone in his possession during the robbery, the magistrate judge knew from the affidavit that criminals use cellular phones "to communicate with associates…before, during, and after their criminal activities, or to communicate with other non-involved third parties…to take pictures and videos…to memorialize their activities and the fruits of their illicit activities…[and] to access the internet to search for and identify…other areas of interest related to their illicit endeavors." Search Warrant at ¶ 22(a)-(f). Additionally, the magistrate judge knew that cellular phones often contain location data, which can indicate a user's physical location at the time of incident. *Id*. at ¶ 22(b).

6

In determining whether probable cause existed, the magistrate judge was permitted to draw reasonable inferences from the facts contained in the warrant. *James*, 3 F.4th at 1105. *See also Cronin v. Peterson*, 982 F.3d 1187, 1197 (8th Cr. 2020); *Eggerson*, 999 F.3d at 1127. The facts in Officer Dooley's affidavit permitted the magistrate judge to draw the reasonable inference that there was a fair probability the Defendant possessed his cellular phone during the robbery. Considered in their totality, the facts in the affidavit "provided a substantial basis" to conclude that probable cause existed to search the Defendant's cellular phone. *Johnson*, 848 F.3d at 876. Thus, the evidence obtained from the search of the Defendant's cellular phone should not be suppressed.

## B. The *Leon* good-faith exception prevents suppression of the evidence obtained from the Defendant's cellular phone.

Even if the Court determines that Officer Dooley's search warrant lacked probable cause, the evidence obtained from the Defendant's cellular phone is still admissible as the good faith exception applies. *Leon*, 468 U.S. at 925. *Leon* makes clear that if an officer obtains a search warrant that appears properly issued on its face and executes the warrant with objective good faith reliance on the warrant's validity, then a defect in the probable cause analysis of the warrant will not cause evidence to be suppressed. *Id*. at 922. However, *Leon* does not apply if the warrant is so facially deficient that no law enforcement officer could reasonably presume the warrant is valid. *Id*. at 923. To determine whether an officer relied in good faith on the validity of a search warrant, the Court must consider "the totality of the circumstances…" *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007). That inquiry must be confined "to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *Leon*, at 922 n.3.

The Defendant alleges that the *Leon* good faith exception is not applicable because "the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" because it was based upon "speculation and boilerplate" information about cellular phones. Doc. 44 at 10. However, the search warrant in this case stands in stark contrast to prototypical "bare-bones" affidavits for which the Supreme Court and the Eighth Circuit have determined the good-faith exception does not apply. *See, e.g., Aguilar v. State of Texas*, 378 U.S. 109 (1964); *Nathanson v. United States*, 290 U.S. 41 (1933).

Officer Dooley's affidavit provided several factual statements, including that the Defendant alleged that he was on his phone at the time of the robbery, an employee provided a current cellular telephone number for the Defendant, and the Defendant was in possession of a cellular phone when arrested. Additionally, the affidavit contained detailed, specific information about Officer Dooley's experience and training regarding how individuals involved in robberies typically utilize cellular telephones for a variety of purposes to advance and commit criminal offenses. Officer Dooley stated that individuals often use mobile phones "to communicate with other non-involved third parties[,]" to "take pictures and videos of themselves…to memorialize their activities and the fruits of their illicit activities[,]" and "to access the internet to search for and identify…other areas of interest related to their illicit endeavors." Search Warrant at ¶ 22(a)-(f). Additionally, the affidavit contained information that the cellular telephone could provide location data, which "can indicate a user's…physical location at the time the incidents occurred." *Id*. at ¶ 22(b). Thus, the information in the affidavit, taken as a whole, clearly renders Officer Dooley's reliance on the warrant objectively reasonable and the evidence from the search of the Defendant's cellular phone should not be suppressed.

## CONCLUSION

The United States respectfully requests that this Honorable Court deny the Defendants Motion to Suppress Physical Evidence [Doc. 44].

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

*/s/ Jennifer Szczucinski*
JENNIFER SZCZUCINSKI, #56906MO
Assistant United States Attorney
111 S. 10th Street, Room 20.388
St. Louis, Missouri 63102
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system.

*/s/ Jennifer L. Szczucinski*
Jennifer L. Szczucinski, #56906MO
Assistant United States Attorney
